**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA DUNHAM,<br><br>    Plaintiff,<br><br>    v.<br><br>ENVIRONMENTAL CHEMICAL CORPORATION, ECC, ECC INTERNATIONAL, AND ECC REMEDIATION SERVICES (collectively referred to as "ECC") and DOES 1-20,<br><br>    Defendants.<br> _____ / | No. C 06-03389 JSW<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

Now before the Court is the motion of defendants Environmental Chemical Corporation, ECC, ECC International, and ECC Remediation Services (collectively referred to as "ECC") to compel arbitration and to stay court action, or in the alternative to dismiss for lack of subject matter jurisdiction under the Federal Rule of Civil Procedure 12(b)(1). The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for August 18, 2006 is VACATED. Having carefully reviewed the parties' papers and the relevant legal authority, the Court hereby DENIES the motion to compel arbitration.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Rita Dunham ("Dunham") was employed by ECC as Field Office Administrator/Logistics Specialist at ECC's Camp Buckmaster, located in Iraq, from

approximately August 3, 2004 to April 28, 2005. (Exhibit A to Notice of Removal at 1; Motion Ex. A.) For the three months prior to her employment with ECC, Dunham had been working in a similar capacity for the company Explosive Ordinance Disposal Technologies ("EODT"). EODT, and later ECC, were both involved in detonating munitions from Saddam Hussein's regime to prevent injury to Iraqi civilians and foreign military personnel in Iraq. (Declaration of Rita Dunham ("Dunham Decl.") at ¶ 4.) In August 2004, EODT's contract with the government expired, and ECC was awarded the contract. (Declaration of Daniel McFerrin ("McFerrin Decl.") at ¶ 2.) ECC offered Dunham a position when ECC took over the government contract. (McFerrin Decl. at ¶¶ 3,4; Motion Ex. A.)

On October 27, 2005, Dunham filed a complaint of discrimination with the California Department of Fair Employment and Housing ("DFEH"), and on December 20, 2005, Dunham filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Complaint at ¶ 22; Answer at ¶ 22.) Dunham received right to sue letters from the DFEH on or about November 6, 2005, and from the EEOC on or about January 17, 2006.

On April 14, 2006, Dunham filed a complaint in Superior Court of the State of California, County of San Mateo. On May 24, 2006, ECC removed the action to federal court. In her complaint, Dunham alleged the following causes of action: (1) sex discrimination and retaliation in violation of the California Fair Employment and Housing Act ("FEHA") and Title VII of the Civil Rights Act of 1964; (2) false imprisonment; (3) non-payment of wages; (4) waiting time penalties; (5) wrongful discharge in violation of public policy; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress.

On July 31, 2004, Dunham signed several documents relating to her employment with ECC. These included: (1) an Application for Employment (Dunham Decl., Ex. 3); (2) a letter of employment (Motion Ex. A); (3) the Arbitration Agreement ("the Arbitration Agreement") (Motion Ex. B); (4) the Confidentiality and Arbitration Agreement ("the Confidentiality Agreement") (Dunham Decl., Ex. 4); and (5) the Trade Secrets and Patent Protection Agreement ("the Trade Secrets Agreement") (Motion Ex. C).

2

The Arbitration Agreement between Dunham and ECC provides as follows:

> EMPLOYEE hereby agrees to follow the established grievance and appeal procedures as set forth by ECC International. Should EMPLOYEE exhaust the remedies provided by the grievance procedures of ECC International, EMPLOYEE and ECC International agree and understand that any controversy or claim arising out of or relating to EMPLOYEE's employment shall be settled by arbitration administered by the American Arbitration Association (AAA) in accordance with its rules and judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Arbitration shall cover any and all disputes incidental to employment, including but not limited to potential claims arising from the at-will employment relationship, tort, discrimination and benefit claims, and claims for violation of any law, statute or ordinance. EMPLOYEE understands and agrees that the Arbitration Process shall also be the sole and exclusive remedy for any claims against any agents or representatives of ECC International, including managers, officers, directors, pension or benefit plans, administrators or fiduciaries, or any affiliated company, to the extent that the claim arises out of their actions on behalf of ECC International.
>
> REQUEST FOR ARBITRATION
> Request for arbitration may be made to the American Arbitration Association either by EMPLOYEE or EMPLOYEE's representative in accordance with the rules provided by AAA.
>
> CONDITIONS PRECEDENT TO ARBITRATION
> If a dispute arises out of or relating to EMPLOYEE's employment, EMPLOYEE agrees to follow the procedures for Grievances outlined by ECC International policy. If EMPLOYEE exhausts all remedies available under the GRIEVANCE procedure and still has a dispute, the parties agree that senior management will try in good faith to settle the dispute within thirty days thereafter before resorting to arbitration.
>
> ARBITRATOR SELECTION
> The arbitration shall be before one neutral arbitrator to be selected in accordance with the Commercial Rules of the AAA and shall proceed under the expedited Procedures of said rules.
>
> In the event any parties [*sic*] claim exceeds $1,000,000, exclusive of interest and attorney's fees, the dispute shall be heard and determined by three arbitrators.
>
> LOCALE PROVISIONS
> The arbitration proceedings shall be conducted in the County of San Mateo, California. In rendering the award, the arbitrator shall determine the rights and obligations of the parties according to the substantive and procedural laws of California. The judgement from the award may be entered in any court of competent jurisdiction.
>
> EMPLOYEE further understands that no part of this Agreement, taken in part or in whole is intended to alter the terms of the At-Will employment relationship.

(Motion Ex. B.)

3

The Confidentiality Agreement between Dunham and ECC provides in pertinent part:

> BUSINESS INFORMATION: Employee understands that certain information (including, but not limited to, with respect to certain equipment, techniques, and other matters, practices and items) which Employee may acquire in connection with his/her employment with Employer is of a highly valuable, secret and confidential nature. Accordingly, Employee agrees that, unless Employee has bee [*sic*] duly authorized by Employer, Employee shall not, either directly or indirectly, reveal, furnish, or communicate to any third party, or otherwise enable or permit any third party to obtain access to, any information relative to the site or the business affairs of Employer. Employee understands and agrees that the breach of any of the provisions of this agreement would result in losses which cannot be reasonable or adequately compensated in damages in a [*sic*] action at law and would cause irreparable injury and damages. Employee hereby expressly agrees that Employer shall be entitled to injunction and other equitable relief to prevent such a breach by Employee. Resort to injunctive and other equitable relief, however, shall not be construed as a waiver of any other rights or remedies which Employer may have under this agreement, for damages or otherwise, nor shall the prosecution of an action at law for damages or other legal relief be construed as a waiver of any other rights or remedies which Employer may have in equity or otherwise under this agreement.
>
> ARBITRATION: Employee understands and agrees that any disputes arising out of or in conjunction with his employment that remain unresolved following appropriate effort shall be resolved using arbitration in accordance with ECC International's Arbitration policy. Arbitration will be conducted in accordance with the rules of the American Arbitration Association, and judgement on any award entered in any arbitration proceeding may be entered upon in any court of competent jurisdiction. The sole and exclusive venue for any arbitration proceedings shall be San Mateo County, California.

(Motion Ex. C.)

The Trade Secrets Agreement provides in pertinent part: "I understand that any violation of this Agreement may result in damages that are not calculable, and that ECC International may pursue any remedy available to it under the law." (*Id.*)

## ANALYSIS

**A.    Legal Standards Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v.*

4

*Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The parties in this case do not dispute that the claims at issue would fall within the scope of the Arbitration Agreements; the only issue is whether the Arbitration Agreements are valid and enforceable.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

Where, as here, a litigant sues to enforce statutory claims, that fact alone will not necessarily preclude arbitration. The Supreme Court has "recognized that federal statutory claims can be appropriately resolved through arbitration, and [it has] enforced agreements to arbitrate that involve such claims." *Green Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. 79, 89 (2000). If statutory claims are involved and an arbitration agreement exists, the agreement should be enforced "unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue," and the litigant can effectively vindicate "[his or her] statutory *cause of action* in the arbitral forum." *Gilmer v. Interstate Johnson/Lane Corp.*, 500 U.S. 20, 26-28 (1991) (emphasis added).

Finally, notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion"). Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Although the Court can initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84

(2002); *Prima Paint*, 388 U.S. at 403-04 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

Here, Dunham contends that the Arbitration Agreement is not enforceable because it is both substantively and procedurally unconscionable. (Opp. Br. at 8.) It is to this analysis that the Court now turns.

## B. The Arbitration Agreement is Unconscionable.

"[U]nconscionability has both a procedural and a substantive element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results. The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz v. Foundation Health Psychcare Services*, 24 Cal. 4th 83, 114 (2000) (citations omitted; emphasis in original). However, procedural and substantive unconscionability "need not be present in the same degree. ... [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282 (2004) (citing *Armendariz*, 24 Cal. 4th at 114).

ECC argues that the agreement is not unconscionable because: (1) Dunham "freely signed the agreement without coercion or duress"; (2) Dunham and an ECC representative both signed the agreement; (3) Dunham signed the agreement before she began her employment; and (4) Dunham did not "express any problems or concerns regarding the terms of the agreement" and did "not indicate that she tried and wasnot allowed to negotiate or that the negotiations were negated." (Motion at 3-4; Reply at 5.) ECC also argues that the arbitration agreement is not unconscionable because the Arbitrator's decision is binding on both parties, and because the agreement does not place any limitations on the types of claims that Dunham may bring, nor does it limit the amount of damages she may receive. (*Id.* at 10.) The Court does not find these arguments persuasive.

### 1. Dunham's Employment Agreement.

6

ECC argues that the Arbitration Agreement is separate from the other agreements Dunham signed in conjunction with her employment. (Reply at 5.) However, a "writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." Restatement (Second) of Contracts § 202 (1981). Here, Dunham was sent the Arbitration Agreement, the Confidentiality Agreement, and the Trade Secrets Agreement in a "packet of new hire documents," along with the letter offering her employment. (Motion at 4; Motion Ex. C.) Dunham signed the papers on the same day, and discussed them together at a one-time meeting with Daniel McFerrin, the Site Manager for ECC at Buckmaster. (McFerrin Decl. at ¶¶ 2, 5.) Therefore, the Court considers the Arbitration Agreement as well as the Confidentiality Agreement and Trade Secrets Agreement together, as part of the same employment agreement between ECC and Dunham.

**2.     The Agreement is Substantively Unconscionable.**

**a.     The Agreement Lacks Bilaterality.**

The substantive inquiry of unconscionability looks to the terms of the agreement itself. An arbitration agreement that is not unconscionable requires a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 117. The California Supreme Court has recognized that:

> unconscionability turns not only on a "one-sided" result, but also on an absence of "justification" for it. If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose.

*Id.* at 117-18 (citations omitted). An arbitration agreement may lack such bilaterality, if, for example, it requires the employee to arbitrate her claims against the employer, but does not so limit the employer in pursuing actions against the employee. *O'Hare v. Municipal Resource Consultants*, 107 Cal. App. 4th 267, 274-79 (2003) (employment agreement considered unconscionable which required arbitration of all employee disputes, but contained no corresponding obligation to arbitrate employer's trade secret claims). The California Supreme Court has also warned: "[g]iven the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that

employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." *Armendariz*, 24 Cal. 4th at 115. While "reasonable justification . . . i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum" may render such an agreement not unconscionable, "[w]ithout such justification, [the Court] must assume that it is [unconscionable]." *Id.* at 120.

In *O'Hare*, the arbitration agreement at issue compelled the employee to arbitrate his claims against his employer, while the employer was free to pursue court action against the employee for the breach of confidential information, among other things. *O'Hare*, 107 Cal. App. 4th at 271. The court found the arrangement to lack mutuality, for "[a]n employee terminated for stealing trade secrets, for example, must arbitrate his or her wrongful termination claim under the agreement while the employer has no corresponding obligation to arbitrate its trade secrets claim against the employee." *Id.* at 274 (citing *Armendariz*, 24 Cal. 4th at 120).

The employment agreement between Dunham and ECC provides that Dunham must arbitrate "all disputes incidental to employment, including but not limited to potential claims arising from the at-will employment relationship, tort, discrimination and benefit claims, and claims for violation of any law, statute or ordinance." (Motion Ex. B.) However, the agreement also allows ECC to retain the right "to pursue any remedy available to it under the law" should Dunham violate the Trade Secrets Agreement, also contained in her employment agreement. (Motion Ex. C.) Further, the Confidentiality Agreement between Dunham and ECC also stipulates that ECC retains its right to seek an "injunction and other equitable relief." (*Id*.) Because the employment agreements reserve ECC's right to pursue litigation against Dunham, but compel her to submit any claims she may have against the company to arbitration, this Court finds that the agreement lacks bilaterality.

The justifications provided for ECC's retention of these rights are that the damages due to breaches of the Trade Secrets or Confidentiality agreements may not be calculable. In its reply, ECC argues that "the reservation of rights to injunctive relief is found in the confidentiality agreement which protects ECC from disclosure of trade secrets. Similar

8

language is not included in the general arbitration agreement, but only within the confidentiality agreement for which there is a reasonable legitimate business justification." (Reply at 6.) The protection of confidential information with "court-ordered and court-enforced injunctive relief" is not a legitimate business justification. *O'Hare*, 107 Cal. App. 4th at 277; *see also Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 177-78 (2002) (holding that the difficulty of calculating monetary damages for misappropriation of intellectual property was not a reasonable business justification for not arbitrating these disputes). The California Court of Appeal reasoned that because parties are entitled to provisional relief, including preliminary injunctions and restraining orders, pending the outcome of arbitration, that "the unilateral right to litigate rather than arbitrate claims. . . cannot be justified by the need for provisional remedies." *O'Hare*, 107 Cal. App. 4th at 277-78 (citing *Stirlen v. Supercuts*, 51 Cal. App. 4th 1519, 1537 (1997)) (citations omitted); *see also* Cal. Civ. Pro. § 1281.8(b) ("A party to an arbitration agreement may file [in court] an application for a provisional remedy in connection with an arbitrable controversy"). Accordingly, the Court finds that the one-sidedness of the employment agreements obligating Dunham to arbitrate her claims against ECC, but allowing ECC to pursue litigation against Dunham, are not justified by legitimate business reasons, and that the provision renders the Arbitration Agreement substantively unconscionable.

ECC argues that each agreement contained in the new hire packet should be considered separately. As discussed above, however, the rules of contract interpretation require that all documents pertaining to the same transaction—in this case, the hiring of a new employee—be considered as a whole, and interpreted together. Further, ECC's contentions are inconsistent: the Arbitration Agreement requires that all claims arising out of Dunham's employment must be submitted to arbitration, and the Confidentiality Agreement, signed as part of the same employee new hire documents on the same day, permits ECC to retain the right to pursue injunctive and equitable relief for a breach of confidential information. A breach of confidential information, defined within the agreement itself as "all documents delivered or imparted by ECC International or any designs, plans, specifications, processes, formulas, patents, and patent applications, inventions, trade secrets, computer programs, sources and object codes and

9

listings, report studies, systems, methods, field date, notes, and any other information and data that Employee might obtain, produce develop, or use *as a result of employment with ECC International*," could only arise out of Dunham's employment. (Motion Ex. 5 (emphasis added).)

Further, this Court finds that the language of the Arbitration Agreement, even considered on its own, does not bind ECC to arbitrate its claims against Dunham. The Arbitration Agreement provides, in pertinent part: "*Should EMPLOYEE exhaust the remedies* provided by the grievance procedures of ECC International, EMPLOYEE and ECC International agree and understand that any controversy or claim arising out of or relating to EMPLOYEE's employment shall be settled by arbitration." (Motion Ex. C) (emphasis added). The phrase implies that the parties agree that *Dunham's* claims, once administratively exhausted, will be submitted to arbitration. Nothing in the Arbitration Agreement suggests that ECC's claims, whether administratively exhausted or not, will be similarly submitted to arbitration. Additional language in the Arbitration Agreement states: "EMPLOYEE understands and agrees that the Arbitration Process shall also be the sole and exclusive remedy for any claims against any agents or representatives of ECC International, including managers, officers, directors, pension or benefit plans, administrators or fiduciaries, or any affiliated company." (Dunham Decl., Ex. 1.) A plain reading of the agreement indicates that Dunham was bound to arbitration as the exclusive remedy for her claims against ECC, but nothing in the agreement so limits ECC. As noted by both the *Armendariz* and *O'Hare* courts, "'Obviously, the lack of mutuality can be manifested as much by what the agreement does not provide as what it does.'" *O'Hare*, 107 Cal. App. 4th at 274 (citing *Armendariz*, 24 Cal. 4th at 120). On these multiple bases, the Court finds that the lack of bilaterality in the Arbitration Agreement renders it substantively unconscionable.

    **b. The Requirement That Dunham Exhaust ECC's Grievance Procedure Is Also Substantively Unconscionable.**

Dunham also contends that the one-sided duty to exhaust pre-arbitration remedies is substantively unconscionable. (Opp. Br. at 16.) The California Appellate Court has recognized

10

1  that the duty to discuss grievances with the employer, in conjunction with an employee-only

2  obligation to arbitrate and time limits on asserting an arbitration claim, can constitute

3  substantive unconscionability.

> While on its face, this provision [that the employee submit to discussions with his supervisors in advance of binding arbitration] may present a laudable mechanism for resolving employment disputes informally, it connotes a less benign goal. Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a "free-peek" at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration.

*Nyulassy*, 120 Cal. App. 4th at 1282-83.  In the agreement between Dunham and ECC there is no limit on the filing of arbitration claims.  However, the reasoning of the Court of Appeal remains persuasive in the case at issue.  While taken alone, the provision to exhaust the company's grievance procedures may not be enough to render the agreement substantively unconscionable, this Court finds that, in conjunction with the agreement's one-sided obligation to arbitrate imposed on Dunham, the provision to exhaust the grievance procedures adds to the contract's substantive unconscionability by permitting ECC to preview Dunham's claims against her employer.

### c. The Arbitrator Cost-Sharing Provision May Also Be Unconscionable.

Dunham argues that the agreement's cost-sharing provision requiring Dunham to split the expenses of the arbitrator is further evidence of substantive unconscionability.  "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court."  *Armendariz*, 24 Cal. 4th at 110-11.  California courts have emphasized that the requirement that the employer pay the unusual costs of arbitration is particularly important where an employee's statutory claims, such as Dunham's FEHA claims, are at issue.  *Id.* at 111; s*ee also Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1254 (2006) (finding a cost-sharing

11

provision for the arbitration expenses substantive unconsionability "at least insofar as it could impact petitioners' statutory claims.")

The Arbitration Agreement itself is silent as to how the parties will divide the costs of the arbitration. Dunham contends that the arbitration process is governed by the American Arbitration Association's ("AAA") Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules"), while ECC contends that the agreement is governed by the AAA's National Rules for the Resolution of Employment Disputes ("Employment Rules"). (Opp. Br. at 17; Reply at 3.)

Dunham argues that the Commercial Rules apply because they are the only rules specified in the agreement. The agreement states: "The arbitration shall be before one neutral arbitrator to be selected in accordance with the Commercial Rules of the AAA and shall proceed under the expedited Procedures of said rules." (Dunham Decl., Ex. 1.) The Expedited Procedures under the Commercial Rules do not explicitly mandate cost-sharing. However, the standard Commercial Rules provide as follows:

> The expenses of witness for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

R-50: Expenses. (Motion Ex. E; Dunham Decl., Ex. 5.)

ECC contends that the Employment Rules apply to all parts of the Arbitration Agreement, and that only the arbitrator selection and proceeding of the arbitration itself are governed by the expedited Commercial Rules. (Reply at 4.) ECC points to the first of the Employment Rules, which states, in pertinent part: "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its *National Rules for the Resolution of Employment Disputes*." Rule 1: Applicable Rules of Arbitration (Motion Ex. F.) ECC argues that because the first paragraph of the Arbitration Agreement states that disputes

12

"shall be settled by arbitration administered by the American Arbitration Association (AAA) in accordance with its rules," application of Rule 1 would render the Employment Rules applicable, unless stated otherwise. (Motion Ex. B; Reply at 3-4.)

The cost-sharing provision of the Employment Rules provides as follows:

> Unless otherwise agreed by the parties, the expenses of witnesses, for either side shall be borne by the party producing such witnesses. All expenses of arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the costs relating to any proof produced at the direction of the arbitrator, shall be borne by the employer, unless the parties agree otherwise or unless the arbitrator directs otherwise in the award as provided for in the Administrative Fee Schedule.

R-39: Expenses. (Motion Ex. F.)

The Commercial Rules would require Dunham to pay half of the arbitrator's expenses, a fee not usually associated with litigation. As such, the cost-sharing provision of the Commercial Rules is clearly unconscionable under *Armendariz*. 24 Cal. 4th at 110-11. Under the Employment Rules, however, which require that the employer pay for all of the arbitrator's expenses, the employee is only required to pay for her own witnesses. This is a cost she would normally bear in a court action, and is therefore within the limits of *Armendariz*. *Id.* Regardless of which set of rule applies, because the Arbitration Agreement is substantively unconscionable due to Dunham's one-sided duty to arbitrate and her obligation to exhaust ECC's grievance procedures, the Court declines to determine which set of rules are applicable.

The Court finds that the employment agreement is substantive unconscionable.[1] The Court now turns to the procedural unconscionability inquiry. Imparting the *Armendariz* sliding

---

[1] The Arbitration Agreement also mandates that "[t]he arbitration proceedings shall be conducted in the County of San Mateo, California." (Dunham Decl., Ex. 1.) Dunham argues that this geographic restriction is substantively unconscionable. The California Court of Appeal has held that an unforeseeable geographic restriction, in conjunction with other arbitration restrictions, may render an arbitration agreement substantively unconscionable if it interferes with the claimant's due process rights, or if the purpose of the combination of provisions is to give the defendants an advantage in the dispute resolution process. *See Bolter v. Superior Court*, 87 Cal. App. 4th 900, 910 (2001); *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1666-67 (1993). Having found the Arbitration Agreement at issue substantively unconscionable on other grounds, the Court declines to rule on whether the instant geographic restriction is independently substantively unconscionable.

13

scale, the Court finds that given the high level of substantive unconscionability present in the employment agreement, very little procedural unconsionability need be shown to render the Arbitration Agreement unconscionable.

### 3.     The Agreement Is Also Procedurally Unconscionable.

#### a.     The Agreement Was Presented As "Take It Or Leave It."

Durham argues that the Arbitration Agreement is also procedurally unconscionable because it was presented to her in a "take it or leave it" situation. (Opp. Br. at 11-12; Dunham Decl. at ¶ 12.) "Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise." *Nyulassy*, 120 Cal. App. 4th at 1281 (citations omitted). Surprise is "a function of the disappointed reasonable expectations of the weaker party." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003). However, "[w]here an adhesive contract is oppressive, surprise need not be shown." *Nyulassy*, 120 Cal. App. 4th at 1281. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003) (citation omitted). The California Court of Appeal has interpreted "contract of adhesion" to require: (1) that the agreement is "drafted by the party of superior bargaining power;" (2) that the agreement is a standardized contract; and (3) that the agreement is presented on a take it or leave it basis. *Higgins*, 140 Cal. App. 4th at 1252. The nature of the contract itself may permit an inference of procedural unconscionability. In *Higgins*, the plaintiffs did not protest the terms of the contract, yet, because it was a standardized contract drafted by the party with superior bargaining power, and presented on a take it or leave it basis, the court found the agreement to be procedural unconscionable. *Id.*

The Arbitration Agreement, Confidentiality Agreement, and Trade Secrets Agreement signed by Dunham were drafted by ECC. (McFerrin Decl. at ¶ 4; Dunham Decl. at ¶ 12.) As the prospective employer, ECC was in a position of superior bargaining power. Further, the

14

agreements were standardized forms—all but the letter offering her employment referred not to Dunham or any of her identifying information, but simply to "EMPLOYEE." (Motion Ex. B.)

Dunham contends that the Arbitration Agreement, signed as a condition of employment with ECC, was presented on a take it or leave it basis. (Opp. Br. at 11.) Indeed, the California Supreme Court has warned that "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 24 Cal. 4th at 115. In particular, Dunham states the following: "[w]hen I was offered the job with defendants I was given employment documents to sign. . . *I was told by Mr. McFerrin that in order to work for defendants and remain at Camp Buckmaster, I was required to sign the employment documents.* (Dunham Decl. at ¶¶ 12, 20) (emphasis added).

Daniel McFerrin, Dunham's supervisor at the time of her hiring, states that at a meeting with Dunham on or about August 1, 2004, before she began her employment with ECC, "[w]e discussed generally the terms of her employment, her duties, salary, and the new hire documents which she had been given with her written offer of employment. She did not express any problem or concern regarding any of the documents she was requested to sign, including the arbitration agreement." (McFerrin Decl. at ¶ 5.) However, ECC has not cited, nor has this Court found, any authority requiring a party to object before it can be found subject to a contract of adhesion. As such, because the employment agreements were: (1) drafted by ECC; (2) standardized contracts; and (3) presented on a take it or leave it basis, the Court thus finds that the Arbitration Agreement is a contract of adhesion.

    **b.**  **Failure To Attach The Arbitration Rules Also Renders the Agreement Procedurally Unconscionable.**

Dunham argues that ECC's failure to attach the arbitration rules (either the Employment Rules, the Commercial Rules, or both) renders the Arbitration Agreement procedurally

15

unconscionable. In *Harper*, the California Court of Appeal found the arbitration clause of a consumer contract unenforceable on the basis that the Better Business Bureau rules referenced in the contract were not attached to the contract, which "forced [the customer] to go to another source to find out the full import of what he or she is about to sign," and because the contract was "unclear whether an arbitration would be conducted under the Better Business Bureau rules as of the time of contracting, or at the time of arbitration." *Harper*, 113 Cal. App. 4th at 1406-07. The court reasoned that the customer's need to go to another source was oppressive, and further, that because the contract did not specify under which set of rules the arbitration would take place, "even a customer who takes the trouble to check the Better Business Bureau arbitration rules before signing the contract may be in for a preliminary legal battle in the event that Better Business Bureau arbitration rules were to become substantively less favorable in the interim." *Id.* Although in *Harper*, the rules governing the arbitration "were not just *procedural* ones," (*Harper*, 113 Cal. App. 4th at 1423) the court in *Fitz* similarly found that failure to attach the AAA's Employment Rules referenced in the employment agreement to the agreement itself deprived employees of adequate notice of the procedures that would govern the arbitration. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004). On this basis, the *Fitz* court refused to allow the Employment Rules to trump an unconscionable provision of the employment agreement, and instead invalidated the entire contract. *Id.*

Here, as in *Fitz* and *Harper*, though the AAA rules were referenced in the Arbitration Agreement, the rules themselves were never provided to Dunham. (Dunham Decl. at ¶ 19.) Nor did the Arbitration Agreement specify whether the rules as of the date the agreement was signed, or as of the date of arbitration, would apply. As such, relying on *Harper* and *Fitz*, this Court finds that failure to attach the referenced AAA rules was procedurally unconscionable.

Accordingly, the Court finds that the arbitration provision between Dunham and ECC is procedurally unconscionable in addition to being substantively unconscionable.

16

### 4. The Unconscionable Provisions Are Not Severable.

Having determined that the provision requiring only Dunham, but not ECC, to arbitrate, and the provision requiring Dunham to exhaust ECC grievance procedures prior to initiating arbitration were substantively unconscionable, and that, as a contract of adhesion that failed to attach the relevant rules the Arbitration Agreement was procedurally unconscionable, the Court next turns to whether or not the Arbitration Agreement can be severed, or if the entire agreement must be invalidated. California Civil Code § 1670.5(a) provides that, where it finds a contract unconscionable, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may limit the application of any unconscionable clause as to avoid any unconscionable result." However, "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civ. Code § 1599. The California Supreme Court provided the following guidance in *Armendariz*:

> The overarching inquiry is whether "the interests of justice . . . would be furthered" by severance. . . . Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.

*Armendariz*, 24 Cal. 4th at 124 (citation omitted).

In *Armendariz*, the Court considered the two substantively unconscionable provisions of the arbitration agreement—an unlawful damages provision and a unilateral arbitration clause—before noting that "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* In particular, the Court noted that when an agreement lacked mutuality, "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement;" instead, augmentation would be necessary. *Id.* at 124-25. However, "Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute." *Id.* at 125. *Armendariz* has

17

been interpreted to have "held that more than one unlawful provision in an arbitration agreement weighs against severance." *Fitz*, 118 Cal. App. 4th at 726. In *Little*, on the other hand, the California Supreme Court declined to invalidate the entire contract when the arbitration agreement did not contain a one-sided obligation to arbitrate. *Little*, 29 Cal. 4th at 1075.

However, in the instant case, the one-sided duty to arbitrate *is* present. The one-sided duty to arbitrate, in conjunction with Dunham's duty to exhaust company grievance procedures, indicates that the agreement is "tainted with illegality," and that the illegality is not merely collateral to the agreement. *See Armendariz*, 24 Cal. 4th at 124. Furthermore, it would be impossible for this Court to strike or restrict a single provision to avoid the contract's unconscionable result. *Id.* at 124-25. Reformation of the Arbitration Agreement would be necessary. As noted in *Armendariz*, this Court does not have such power. *Id.* at 125. Accordingly, this Court finds the entire Arbitration Agreement invalid, and thus declines to enforce it.

## CONCLUSION

For the foregoing reasons, ECC's motion to compel arbitration is hereby DENIED.

**IT IS SO ORDERED.**

Dated: August 16, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE